# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| TRUMAN CAPITAL ADVISORS LP,<br>U.S. BANK NATIONAL ASSOCIATION, solely as<br>LEGAL TITLE TRUSTEE FOR THE TRUMAN<br>2012 SC2 TITLE TRUST, and as PARTICIPATION<br>AGENT FOR THE TRUMAN 2012 SC2 TITLE<br>TRUST, and TRUMAN 2012 SC2 TITLE TRUST<br><br>        Plaintiffs,<br><br>    -vs-<br><br>NATIONSTAR MORTGAGE, LLC,<br><br>        Defendant. | Index No.<br><br><br><br>**SUMMONS** |

TO:    Nationstar Mortgage, LLC
        c/o Corporate Service Company
        80 State Street
        Albany, New York, 12207-2543

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your answer within twenty (20) days after the service of this Summons and the Complaint, exclusive of the day of service, or within thirty (30) days after the service is complete if this Summons and Complaint are not personally delivered to you within the State of New York. In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

New York County is designated as the venue for this action by Plaintiffs pursuant to CPLR §§ 503(a) and (c).

Dated:  New York, New York
       July 29, 2013

**BUTZEL LONG,** a professional corporation

By     _____
        Robert D. Piliero
        Regina M. Alter
380 Madison Avenue
New York, New York 10017
(212) 818-1110
Piliero@butzel.com
Alter@butzel.com
*Attorneys for Plaintiffs*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

TRUMAN CAPITAL ADVISORS LP,
U.S. BANK NATIONAL ASSOCIATION, solely as
LEGAL TITLE TRUSTEE FOR THE TRUMAN
2012 SC2 TITLE TRUST, and as PARTICIPATION
AGENT FOR THE TRUMAN 2012 SC2 TITLE
TRUST, and TRUMAN 2012 SC2 TITLE TRUST

Index No.

Plaintiffs,

**COMPLAINT**

-vs-

NATIONSTAR MORTGAGE, LLC,

Defendant.

---

Plaintiffs Truman Capital Advisors, LP ("TCA"), individually and as Program Manager

for the Truman 2012 SC2 Title Trust (the "Trust") and U.S. Bank National Association, solely in

its capacity as Legal Title Trustee (the "Legal Title Trustee") and as Participation Agent (the

"Participation Agent") for the Trust, through their undersigned counsel, respectfully assert as

their Complaint against Nationstar Mortgage, LLC ("Nationstar") as follows:

## NATURE OF THE ACTION

1.        This dispute arises out of Nationstar's repudiation of its agreement to sell to TCA

certain residential mortgage loans ("Mortgage Loans") for an agreed price of approximately

$150 million.  Nationstar offered hundreds of such Mortgage Loans for sale through an on-line

auction hosted by its agent, Auction.com.  TCA and a number of other investors devoted

substantial time and substantial money reviewing the information Nationstar provided regarding

the Mortgage Loans it was offering for sale; conducting extensive due diligence regarding the

quality and potential value of these hundreds of loans; and participating in the bidding process.

By the end of that process, acting through its agent, Auction.com, Nationstar had notified and confirmed to TCA that it was the winning bidder with respect to 534 Mortgage Loans.

2.      Within a few days, however, Nationstar, again acting through its agent, Auction.com, notified TCA that Nationstar refused to complete the sale and transfer of the Mortgage Loans covered by TCA's winning bids.  Nationstar offered no explanation for this reversal other than to say that it "has made the decision not to go forward with those sales." However, upon information and belief, Nationstar's decision in that regard was based principally, if not solely, on its belated realization that the reserve prices it had set for, and at which it had agreed to sell, the Mortgage Loans to TCA was significantly lower than their fair market value.  Nationstar's decision to renege on its commitment to sell the Mortgage Loans to TCA at the agreed price has caused TCA to suffer at least $35 million in damages.

## PARTIES

3.      Plaintiff TCA is a limited partnership with its principal offices located at 200 Business Park Drive, Suite 103, Armonk, New York 10504.  TCA sues both in its individual capacity and in its capacity as Depositor's agent.

4.      Plaintiff U.S. Bank National Association is a national banking association.  It is qualified to do business in the State of New York and maintains its principal New York offices at 100 Wall Street, New York, NY 10005.  U.S. Bank sues only in its capacities as Legal Title Trustee for the Trust and as Participation Agent for the Trust, and not in its individual capacity.

5.      The Trust is a New York common law trust established pursuant to a trust agreement.

6.      Defendant Nationstar is a limited liability company that is a registered Mortgage Banker licensed by the New York Banking Department, with offices located at One State Street, New York, New York 10004.

7.     This Court has personal jurisdiction over Nationstar pursuant to CPLR 301 and 302 because it does business and transacts business in New York.  Venue is properly laid in this Court pursuant to CPLR 503.

## BACKGROUND

8.     TCA acts as an investment manager for institutional investors.  In furtherance of its duties as an investment manager, TCA caused to be created and served as Program Manager for the Trust and acted as the agent of Truman 2012 SC2, LLC ("Depositor").  In its capacity as Depositor's agent, TCA is charged with identifying potential investments in residential mortgage loans and real estate owned properties, providing research and analysis regarding such potential investments, advising on whether to purchase the potential investments, and negotiating and facilitating the purchase of any potential investments for which the decision is made to purchase. Once purchased, title to the residential mortgage loans and real estate owned properties are deposited into the Trust.  As investment manager, TCA was entitled to receive fees for its post-acquisition services that flowed from managing the purchased investments.

9.     Nationstar is a "mortgage servicer" with a nationwide scope of business.  In the context of residential mortgage loans, a mortgage servicer is a company that has full power and authority, acting alone or through sub-servicers, to take any and all actions deemed necessary or appropriate in connection with the administration of mortgage loans that are covered by a Master Servicing Agreement.  Upon information and belief, Nationstar currently services nearly 650,000 mortgages with an aggregate unpaid principal balance of more than $100 billion.

10.     In July 2012, Nationstar purchased the servicing rights as Master Servicer on a large volume of residential mortgage loans.  As part of that transaction, Nationstar assumed all of the rights and obligations of the Master Servicer under Pooling and Servicing Agreements (the

"PSAs"), including the right to take all actions necessary or appropriate to maximize recoveries on each of the mortgage loans.

11.     Nationstar has publicly acknowledged that among the rights and obligations conferred on it by the governing agreements is the right to sell non-performing loans.

**Nationstar Decides to Sell Non-Performing Loans at Auction**

12.     In or about January 2013, Nationstar engaged Auction.com as its exclusive agent to sell by auction and to conduct a series of Reserve auctions for the sale of a large number of non-performing residential mortgage loans that were to be grouped into "pools" of such loans, with a number of pools to be offered for sale at each of the Reserve auctions contemplated by Nationstar.

13.     An auction is a process used to buy and sell goods and services by offering them for bid, receiving bids, and then selling the item to the highest bidder.  The English auction, also known as an open ascending price auction, is believed to be the most common form of auction in use today.  Participants openly bid against each other, with each subsequent bid required to be higher than the previous bid.  The auction ends when no participant is willing to bid further, at which point the auctioneer announces a sale to the highest bidder, thus creating a binding obligation by the seller to sell and a binding obligation by the successful bidder to buy.

14.     A variation on the English auction is the Reserve auction.  In a Reserve auction, the seller may establish a minimum sale, or "reserve," price in advance.  If the final bid does not meet or exceed the reserve price, then the item remains unsold.

15.     In all auctions, Reserve or otherwise, the sale is complete when the auctioneer announces the winning bidder.  After that announcement, the seller may not withdraw the item and is legally bound to complete the sale to the winning bidder.

16.     Auction.com is provider of online real estate auction services.  Upon information and belief, Auction.com has acted as a seller's agent in connection with the sale of approximately $20 billion worth of property since 2007.

17.     On or about January 23, 2013, Auction.com published Reserve Auction Terms and Conditions ("Auction Terms") that would govern all the online auctions that it would conduct for Nationstar.  A true copy of the Auction Terms is annexed hereto as Exhibit 1, and its provisions are incorporated herein.

18.     The Auction Terms provided that due diligence records would be made available for each Note in a secure data vault, and that all bidders would be required to fully complete their due diligence on each Note before bidding, including a review of the records in the data vault.

19.     On or about January 23, 2013, as required by the Auction Terms, TCA, acting as Depositor's agent, submitted an online registration which enabled it to participate as a bidder in the auctions of Mortgage Loans to be offered for sale by Nationstar.

20.     On or about January 31, 2013, TCA, acting as Depositor's agent, began its detailed financial review of each Note as part of its due diligence.  That review included, but went far beyond, the records that Nationstar had electronically deposited in the data vault.

**KIRP Objects to the Sale of Some of the Mortgage Loans**

21.     On February 5, 2013, non-party KIRP LLC ("KIRP") wrote a letter to Nationstar expressing concern about Nationstar's stated intention to auction any Mortgage Loans (the "Challenged Mortgage Loans") that were collateral for the certificates issued by six residential mortgage-backed security trusts sponsored by Residential Accredit Loans, Inc. (the "RALI Trusts"), in which KIRP had a financial interest.  In the letter, KIRP asserted that Nationstar lacked authority to sell the Challenged Mortgage Loans under the terms of the applicable Servicing Agreements.

22.     The substantial majority of the Mortgage Loans included in the auction were not sponsored by the RALI Trusts, and KIRP had no financial interest in them.

23.     Upon information and belief, Nationstar did not respond to KIRP's letter, nor did it remove the Challenged Mortgage Loans from the pool of Mortgage Loans it was offering for sale.

24.     Nationstar did not inform TCA or, upon information and belief any of the entities that had registered to participate in the auction, about KIRP's letter, its objections or its assertion that Nationstar lacked the legal right to sell the Challenged Mortgage Loans.

25.     Unaware of KIRP's objection to the sale of the Challenged Mortgage Loans, TCA continued its detailed due diligence review of 636 Mortgage Loans that it was interested in purchasing on behalf of Depositor. That review included, but went far beyond, the records Nationstar had electronically deposited in the data vault.

**TCA is the Winning Bidder on 304 Mortgage Loans**

26.     Nationstar did not remove the Challenged Mortgage Loans from the auction while it was in progress.

27.     At no time while the auction was in progress did Nationstar inform TCA, or upon information and belief any of the other registered bidders, about KIRP's claim regarding the Challenged Mortgage Loans.

28.     On or about February 21, 2013, after completing its extensive due diligence review, TCA timely placed bids, in multiple pools, on 480 of the Mortgage Loans offered for sale.  Although unknown to TCA, some of the 480 Mortgage Loans on which it had submitted bids were Challenged Mortgage Loans

29.     At the conclusion of the auction, Auction.com confirmed in writing that TCA was the winning bidder with respect to multiple pools totaling 304 Mortgage Loans.  The winning bid price was approximately $94,045,115.

30.     The auctioneer's announcement that TCA had won these Mortgage Loans created a binding obligation for Nationstar to sell the 304 Mortgage Loans at the agreed price. Although unknown to TCA, some of these Mortgage Loans were Challenged Mortgage Loans.

**Nationstar's Auction Sale Continues**

31.     On or about February 19, 2013, Auction.com announced that Nationstar's sale of non-performing Mortgage Loans would continue in another two-day Reserve auction, covering additional pools of Mortgage Loans to be sold by Nationstar, under the same Auction Terms as the first auction of Mortgage Loans on behalf of Nationstar, and pursuant to the same online registration that TCA had already submitted.

32.     Auction.com's announcement did not disclose that the Mortgage Loans to be offered for sale included certain Challenged Mortgage Loans, the sale of which KIRP had objected to two weeks earlier.

33.     As had occurred in connection with Nationstar's earlier auction, due diligence records were made available to registered bidders in a secure data vault.

34.     From on or about February 22, 2013 through about March 4, 2013, TCA, as Depositor's agent, conducted its detailed due diligence financial review of each of the 547 Mortgage Loans that formed a part of this auction.   That review included, but went far beyond, the records Nationstar had electronically deposited in the data vault.

35.     Following the due diligence review, TCA, as Depositor's agent, decided to bid on pools encompassing 346 of the 547 Mortgage Loans it had reviewed.

**KIRP Renews Its Objections**

36.     Upon information and belief, on March 4, 2013, KIRP, through its attorney, again notified Nationstar of its objection to the auction based on its assertion that Nationstar did not have the legal right to sell non-performing loans that formed part of the collateral for the RALI Trusts.

37.     Upon information and belief, on March 5, 2013, Nationstar's attorney responded to the March 4, 2013 letter from KIRP's attorney, stating that Nationstar would not respond before March 7, 2013, which was the day after the Second Auction was scheduled to end.

38.     Upon information and belief, on March 5, KIRP asked Nationstar to agree to a "standstill" period of five days during which Nationstar would not transfer, convey, or sell any loans that had been subject to auction through Auction.com, and to refrain from commencing any new auctions during that time.  Upon information and belief, Nationstar did not respond to this request.

39.     Nationstar did not remove the Challenged Mortgage Loans from the second round of the auction while it was in progress.  At no time during the two days in which this second round of the auction was in progress did Nationstar inform TCA, or upon information and belief any of the other registered bidders, about KIRP's claim regarding the Challenged Mortgage Loans.

40.     On March 6, 2013, after completing its due diligence review, TCA placed bids in multiple pools on 346 of the 547 Mortgage Loans offered for sale.  Unknown to TCA, some of the 346 Mortgage Loans on which it had submitted bids were Challenged Mortgage Loans.

41.     At the conclusion of the auction, Auction.com confirmed in writing that TCA was the winning bidder with respect to multiple pools totaling 234 Mortgage Loans.  The winning bid price was approximately $55,312,005.

- 8 -

42.     The auctioneer's announcement that TCA had won these Mortgage Loans created a binding obligation for Nationstar to sell the 234 Mortgage Loans to at the agreed price. Unknown to TCA, some of these Mortgage Loans were Challenged Mortgage Loans.

**KIRP Commences Litigation**

43.     On March 7, 2013, KIRP commenced an action in the Supreme Court of the State of New York, County of New York, styled *KIRP, LLC v. Nationstar Mortgage, LLC*, Index No. 650794/13 (the "KIRP Action").

44.     On the same day, KIRP sought and was granted a Temporary Restraining Order ("TRO") enjoining the sale of "any non-performing mortgage loans collateralizing the certificates issued by the RALI Trusts that ha[d] already been auctioned through www.auction.com or other similar websites." As such, the TRO applied solely to the Challenged Mortgage Loans. Among the allegations made by KIRP in its Complaint and submissions in support of its application for a TRO were assertions that Nationstar was offering the Mortgage Loans at substantial discounts—some as much as or more than 50%— below their fair market value.

**Nationstar Refuses to Sell TCA Any of the Mortgage Loans**

45.     Only about 20% of the Mortgage Loans that Nationstar had agreed to sell to TCA are Challenged Mortgage Loans as to which KIRP had any claim and which were subject to the TRO. Nonetheless, on March 15, 2013, Auction.com notified TCA that Nationstar had decided renege on its agreement to sell **all** the Mortgage Loans as to which TCA had been the winning bidder.

46.     On April 22, 2013, the Supreme Court dissolved the TRO on the stipulation of KIRP and Nationstar.

47.    In the KIRP Action, Nationstar has judicially admitted that the "unambiguous terms" of the applicable mortgage servicing agreements "expressly permitted" it to sell the non-performing Mortgage Loans offered for sale at the auction.

48.    Since dissolution of the TRO, and in an effort to avoid litigation, TCA has again asked Nationstar to complete the sale.

49.    To this day, Nationstar still refuses to honor its obligations to TCA, and has informed TCA that it will not complete the sale of the Mortgage Loans, even as to the 80-85% of the Mortgage Loans that are not subject to the *KIRP* litigation.

50.    As a result, Depositor has authorized TCA to sue Nationstar in TCA's name to protect and enforce the rights of Depositor, as TCA's principal, with regard to the Mortgage Loans.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

51.    TCA repeats all of the foregoing allegations as though fully set forth herein.

52.    Nationstar and TCA entered into valid, binding and enforceable agreements for the sale of 538 Mortgage Loans for an aggregate purchase price of $149,357,120.

53.    Nationstar has, without legal excuse or justification, refused to perform its obligation to complete the sale of the Mortgage Loans to TCA for the agreed upon price, despite due demand from TCA.

54.    TCA has fully and faithfully performed its own obligations or was otherwise excused from performance of those obligations by Nationstar's agent, Auction.com, or because of Nationstar's failure to perform.

55.     As a direct, foreseeable, proximate, and inevitable result of Nationstar's breach, TCA and the Trust have sustained injury and damages in an amount not yet capable of precise ascertainment but believed to be in excess of $35 million.

## SECOND CAUSE OF ACTION
### (Promissory Estoppel)

56.     TCA repeats all of the foregoing allegations as though fully set forth herein.

57.     In the alternative, if Nationstar's refusal to complete the sale of the Mortgage Loans to TCA does not constitute a breach of contract, then TCA and the Trust are entitled to relief under the doctrine of promissory estoppel because TCA reasonably relied to its detriment on promises and assurances made by Nationstar through its duly authorized agent, Auction.com, that Nationstar would sell 538 Mortgage Loans for an aggregate purchase price of $149,357,120.

58.     As a direct, foreseeable, proximate, and inevitable result of Nationstar's promises and TCA's reasonable reliance thereon, TCA and the Trust have suffered injury and damages in an amount in an amount not yet capable of precise ascertainment.  Under California law, made applicable by the Auction Terms, TCA and the Trust are entitled to recover from Nationstar an amount equal to the amount that would be recoverable for breach of contract, but in no event less than the amount of costs directly incurred by TCA in reliance on Nationstar's promise to sell the Mortgage Loans to the winning bidder.

**WHEREFORE**, TCA, the Legal Title Trustee and the Participation Agent, on behalf of the Trust, respectfully request entry of Judgment against Nationstar in an amount to be determined at trial, but believed to be in excess of $35 million, as well as all costs and expenses, including without limitation reasonable attorneys' fees, incurred by TCA, the Legal Title Trustee and the Participation Agent, on behalf of the Trust, in this action.

Dated: New York, New York
       July 29, 2013

                                Respectfully submitted,

                                **BUTZEL LONG,** a professional corporation

                                By: _____
                                     Robert D. Piliero
                                     Regina M. Alter
                                     380 Madison Avenue
                                     New York, New York 10017
                                     (212) 818-1110
                                     piliero@butzel.com
                                     alter@butzel.com

                                *Attorneys for Plaintiffs*

- 12 -

Exhibit 1



RESERVE AUCTION TERMS AND CONDITIONS – POOL NOTES

ONLINE ONLY BIDDING

| SUMMARY OF KEY TERMS: | |
| --- | --- |
| INITIAL BIDDING DEPOSIT: | $5,000 Minimum per Pool – Please see Auction Registration Page for specifics |
| BUYER'S PREMIUM: | Greater of (i) 5% of the Winning Bid Amount or (ii) $10,000* |
| EARNEST MONEY DEPOSIT: | Greater of (i) 10% of the Total Purchase Price or (ii) $20,000 |

The Auction will be conducted by Auction.com ("Auctioneer").  Auctioneer, as used in these Terms and Conditions, shall include but not be limited to, any and all of its agents, employees, representatives, officers and directors.  These Terms and Conditions generally describe the Auction of a pool of notes secured by real properties (individually, a "Note" and collectively, the "Notes") owned by one or more selling entities ("Seller" herein shall include the selling entity and its parent company, subsidiaries, or affiliated companies).  The Sellers of the Notes listed have instructed Auctioneer to auction the listed Notes on the Terms and Conditions set forth below.  Terms and Conditions may vary among the Notes in each Auction, so please review the Terms and Conditions for each Note carefully.  Prospective purchasers who register in accordance with the instructions below will be deemed "Bidders" during the Auction.  Winning Bidders (each a "Winning Bidder") will be required to execute loan sale documentation in a form and with terms and provisions required by Seller (the "Loan Sale Agreement"), which Loan Sale Agreement will incorporate many of these Terms and Conditions. The Loan Sale Agreement is posted at www.auction.com and is not negotiable.

## 1. REGISTRATION

Registration is required in order to bid online during the Auction and there is no fee to register.  In order to register for the Auction, please go to www.auction.com, click on the "Online Bidding" tab and follow the registration instructions.  As part of the registration process, you will be required, on a per Note basis, to (i) have a credit card authorization issued or make a refundable deposit by wire transfer or cashiers check to a third party escrow holder for the Initial Bidding Deposit, the amount of which shall be set forth for each particular Note on the auction registration page for such Note and (ii) for private investors (e.g. non-institutional), show proof of readily available funds in the form of bank statements and/or investment account (stocks/bonds) statements (dated within sixty (60) days).  Any questions regarding qualification shall be directed to Seller's loan sale advisor as other qualification conditions may be required by Seller.  Following registration approval, private investor Bidders may be required to provide, upon request, additional proof of readily available funds and/or an additional Initial Bidding Deposit amount to bid or continue bidding.  In the event bidding has begun, then Auctioneer may suspend, in its sole discretion, any further bidding by Bidder until additional proof of funds and/or an additional Initial Bidding Deposit amount is confirmed by Auctioneer.  Please ensure you register as a bidder in the name of the person or the entity that will be the buyer in the event your bid is the winning bid.  Only the name of the registered bidder who has received final registration approval will be permitted on the loan sale documentation.  If you are registering to bid as anything other than a natural person, you will be required to provide the necessary legal documentation evidencing good standing as an entity, which documentation may include the Articles of Incorporation or Organization, a Certificate of Good Standing issued within forty-five (45) days, ByLaws, Resolutions, Operating Agreement, Partnership Agreement, Trust document or other legal documentation evidencing the legal existence of the bidder as may be requested by the Auctioneer.  Please follow the instructions on the website carefully to make sure you obtain final registration approval, which approval confirmation will be sent by e-mail to you and will allow you to bid online during the Auction.  We highly recommend registering well in advance of the Auction to enhance your chances of being notified of any changes that may take place prior to Auction day.  Individuals from outside the United States may register to bid online.



**RESERVE AUCTION TERMS AND CONDITIONS – POOL NOTES**

**ONLINE ONLY BIDDING**

### 2. DUE DILIGENCE

Each Note will have due diligence documents available for viewing in a secure data vault at www.auction.com. A confidentiality agreement will be required to be acknowledged and agreed to prior to entering the data vault. All Bidders must fully complete their Note due diligence prior to bidding, including reviewing the information contained in the data vault. No Bidder shall enter onto the premises or into the property secured by the Note or contact any borrower or any occupants or tenants of the underlying property without the authorization of the Seller, however viewing the property without entering onto the premises is permissible.

### 3. ONLINE BIDDING AND BUYING

<u>Reserve Auction</u>. This is a reserve auction and all Notes have a reserve price ("Reserve Price"), meaning the Seller of each Note can accept or reject any bid and has also established an unpublished, minimum selling price. The starting bid is not the Reserve Price. In order to become the Winning Bidder for a Note, a Bidder must meet or exceed the Reserve Price and the bid must be accepted by the Seller (see "Subject to Confirmation" section below). Except where prohibited by law, during a live bidding event (online or otherwise) the Auctioneer may open bidding on any Note by placing a bid on behalf of the Seller and may further bid on behalf of the Seller, up to the amount of the Reserve Price, by placing successive or consecutive bids for a Note, or by placing bids in response to other bidders. If no bidders meet the Reserve Price, the Seller is under no obligation to sell the Note. The Seller may withdraw a Note at any time prior to the announcement of the completion of the sale by the Auctioneer. Auctioneer is not acting as an agent for any Bidder in any capacity, and is acting exclusively as the Seller's agent as an auctioneer.

<u>Buyer's Premium and Total Purchase Price</u>. The purchase price will include a buyer's premium equal to the greater of five percent (5%) of the winning bid amount or $10,000 (*unless otherwise specified in the specific property listing or Loan Sale Agreement). Please check the Property details page at www.auction.com regarding Property specific terms. In the event the Seller is selling Notes that are in conjunction with a purchase option, then the buyer's premium may be paid separately from the purchase price by Buyer to Auctioneer, all as set forth in such Loan Sale Agreement. The total purchase price may also include escrow and reserve accounts (the "Total Purchase Price"), but does not include other amounts payable by the Buyer during closing, such as escrow/closing fees, etc. Please review the Loan Sale Agreement for specific details.

<u>Bidding and Winning</u>. The bidder authorization and log-in information given to you upon successfully registering to bid online shall be used by you during the Auction to bid on Notes. To purchase a particular Note at the Auction, one must be acknowledged by the Auctioneer as the Winning Bidder (the bidder to whom the Auctioneer acknowledges the Note as being "SOLD" to), and such Note is not identified as being sold "Subject to Confirmation" (see below). If you are the Winning Bidder, you will be contacted by phone by an Auctioneer representative at the phone number you provided during registration. Once contacted by an Auctioneer representative, the Winning Bidder will be sent, by e-mail, the Loan Sale Agreement and certain other documents for electronic signature, unless otherwise directed by Seller. The Loan Sale Agreement will contain the exact terms and conditions of the sale. As between Winning Bidder and Seller, the Loan Sale Agreement supersedes any and all other documents or information (including without limitation these Terms and Conditions) and serves as the governing document for the sale of each Note. After executing the Loan Sale Agreement electronically, which shall be executed within two (2) hours of Auctioneer's acknowledgment of the winning bid, Winning Bidder will be contacted by an escrow/closing agent or settlement attorney, who will provide them certain additional information pertaining to the closing process.

If a Winning Bidder cannot be reached within two (2) hours of Auctioneer's acknowledgment of the winning bid, or Winning Bidder fails to electronically execute the purchase documentation within two (2) hours of Auctioneer's acknowledgment of the winning bid, then Auctioneer or Seller can declare the Winning Bidder to be in default. In the event of such declaration, the Winning Bidder's bid shall be null and void and the Auctioneer and Seller shall have absolutely no further liability or obligation to that Bidder. IN ADDITION, SUCH WINNING BIDDER SHALL BE SUBJECT TO LIQUIDATED DAMAGES EQUAL TO TEN PERCENT (10%) OF THE PURCHASE PRICE AND AUCTIONEER AND SELLER



**RESERVE AUCTION TERMS AND CONDITIONS – POOL NOTES**

**ONLINE ONLY BIDDING**

RESERVE THE RIGHT TO SEEK ANY AND ALL OTHER REMEDIES, INCLUDING SPECIFIC PERFORMANCE.  Additionally, Seller shall have the right to retain the Initial Bidding Deposit as part of the liquidated damages.  Furthermore, Auctioneer and Seller reserve the right to immediately put the Note back up for sale.

In order to allow final bids to be properly input and processed, the Auctioneer may extend the close of bidding for any Note in certain time increments to allow for additional bids.  Once an extension of time has elapsed with no additional, higher bids, then the bidding will be closed.

Subject to Confirmation.  In the event the winning bid amount is not immediately accepted by the Seller, the Auctioneer will inform the Winning Bidder that acceptance of their winning bid is "subject to confirmation."  Winning Bidder acknowledges and agrees that Winning Bidder's purchase is subject to, and contingent upon, the Seller approving the purchase, which shall be given or denied at their sole and absolute discretion within five (5) business days following the close of the Auction and execution of the Loan Sale Agreement by the Winning Bidder.  For certain assets, different timeframes may apply, please review the www.auction.com website and the purchase documentation for further information.  The Winning Bidder shall be required to provide loan level pricing upon the execution of the Loan Sale Agreement.  Seller shall at its sole discretion be able to approve or reject the contract individually with respect to each loan.  Winning Bidder will receive a refund of monies deposited in the event Seller chooses not to accept the bid.

Payment of Deposit and Remaining Balance.  As the Earnest Money Deposit, Winning Bidder shall be required to pay an amount equal to the greater of (i) ten percent (10%) of the Total Purchase Price or (ii) $20,000 on any Note purchase (unless otherwise specified in the loan sale documentation).  The Earnest Money Deposit must be made no later than twenty-four (24) hours following the close of the auction (including Notes sold "subject to confirmation").  All monies will be immediately deposited with an escrow/closing agent or settlement attorney and shall be released to the Seller within twenty-four (24) hours following receipt by the escrow/closing agent of the deposit and the fully executed Loan Sale Agreement.  The balance of the Total Purchase Price, along with all other costs and/or fees, must be paid as required in the Loan Sale Agreement.

If Winning Bidder fails to deliver the Earnest Money Deposit within twenty-four (24) hours following the close of the Auction, then Auctioneer or Seller can declare the Winning Bidder to be in default.  IN SUCH EVENT, THE WINNING BIDDER SHALL BE SUBJECT TO LIQUIDATED DAMAGES EQUAL TO TEN PERCENT (10%) OF THE PURCHASE PRICE AND AUCTIONEER AND SELLER RESERVE THE RIGHT TO SEEK ANY AND ALL OTHER REMEDIES, INCLUDING SPECIFIC PERFORMANCE.  Any further liability resulting from such default by Winning Bidder shall be controlled by the terms of the Loan Sale Agreement.  Additionally, Seller shall have the right to retain the Initial Bidding Deposit as part of the liquidated damages.

Closing.  All sales are expected to close with a national or regional escrow/closing firm within ten (10) business days of the close of the auction (fifteen (15) business days of the close of the auction for accepted "subject to confirmation" bids) or as set forth in the Loan Sale Agreement.  Winning Bidders shall be required to pay all closing costs, including, but not limited to, escrow/closing fees, title fees and costs, recording fees, normal prorations, document preparation fees, and all documentary transfer taxes (or other taxes) as applicable and as set forth in the Loan Sale Agreement.  Winning Bidders also may be required to pay additional fees and costs as provided in the Loan Sale Agreement.

Extensions.  In certain cases, the Seller may grant an extension of the closing date, the terms and conditions of which are set forth in the Loan Sale Agreement.  The Seller may require Buyer to pay a fee for such extension.  This fee WILL NOT be credited towards the Total Purchase Price.  All extension requests are evaluated by the Auctioneer and Seller on a case-by-case basis and may be granted or denied in their sole and absolute discretion.

Conveyance.  Except as may be set forth in the Loan Sale Agreement, the Note will be assigned with a lender's title policy ensuring the Note's secured position, subject to standard title exclusions and exceptions and subject to the terms and conditions set forth in the Loan Sale Agreement.  Bidder understands and agrees that neither Seller no Auctioneer makes any representations or warranties regarding the status of real estate taxes, liens, utility charges or other monetary



**RESERVE AUCTION TERMS AND CONDITIONS – POOL NOTES**

**ONLINE ONLY BIDDING**

encumbrances affecting the property securing the Note. Bidder further understands and agrees and that it is the sole responsibility of Bidder to determine the status of real estate and personal property taxes, liens, utility charges or other monetary encumbrances that may be assessed against the property securing the Note, and neither Seller nor Auctioneer shall have any responsibility whatsoever with respect to payment of same.

### 4. PAYING FOR YOUR PURCHASE

No financing will be made available for the Auction. All purchases will be cash only. NO financing contingency shall be applicable to any Notes in the auction. Auctioneer does not provide lending or financial services.

### 5. FINDER'S FEE

A finder's fee, based on the winning bid amount, may be available on the Notes for which these Terms and Conditions are applicable and paid to individuals: (i) who have submitted a finder's fee registration form ("Finder's Fee Registration Form") (contact the loan sale advisor) at least twenty-four (24) hours prior to the start of the auction (the "Qualification Deadline"), (ii) whose client/Bidder successfully purchases a Note for which the finder's fee applies and the transaction closes, and (iii) who has satisfied all other requirements set forth herein. Please check the website for specific finder's fee amounts, if any, related to specific Notes. THERE WILL BE NO FINDER'S FEE REGISTRATION PERMITTED AFTER THE QUALIFICATION DEADLINE. THERE ARE NO EXCEPTIONS TO THE QUALIFICATION RULES. Please verify whether a finder's fee is applicable by checking the asset detail listing page.

To qualify for and earn a finder's fee, brokers/agents must:

1. Fully complete the Finder's Fee Registration Form, including the execution by your client/Bidder acknowledging your representation of such client/Bidder, and ensure that when your client/Bidder registers for the Auction, that they include your information as part of their registration;

2. Have a valid and active real estate broker or salesperson license and provide assistance to your client during the due diligence period;

3. Execute the loan sale documentation by electronic means, along with your client, within 24 hours of the client receiving the emailed documentation signing link. If you fail to sign the loan sale documentation within the time prescribed, you shall not be entitled to any finder's fee. Finder's fees will be earned and paid upon closing; and

4. Provide the Escrow/Closing Agent with an IRS Form W-9 or electronically complete an IRS Form W-9 in order to receive a finder's fee.

5. No finder's fee will be paid to a person or entity (a) acting as a principal in the purchase of any Note, (b) that is a director, employee, manager, or member of the client/bidder, or an affiliate of such client/bidder, or (c) is an immediate family member (defined as a spouse, parent, sibling, or child including in-law relationships) of such client/bidder.

### 6. GENERAL AUCTION INFORMATION

Sellers and Auctioneer reserve the right to deny any person the ability to bid and/or access to the online bidding platform for any reason. Seller and Auctioneer have the right to postpone or cancel the Auction, to withdraw any Note from the Auction and to change any terms of the Auction or particular conditions of sale upon announcement prior to or during the course of the Auction. In the event of a dispute among Bidders, the Auctioneer shall make the sole and final decision to either accept the final bid or to re-offer and resell the Note in dispute.



**RESERVE AUCTION TERMS AND CONDITIONS – POOL NOTES**

**ONLINE ONLY BIDDING**

The respective rights and obligations of the parties with respect to these Auction Terms and Conditions and the conduct of the Auction shall be governed by, interpreted and enforced under the laws of the state of California. By bidding in the Auction by the Internet, each Bidder shall be deemed to have irrevocably submitted to the courts of competent jurisdiction in Orange County, California (including the federal courts) in connection with any suit, proceeding or other legal process relating to the Auction and/or the offering or sale of any Note. Upon execution of the Loan Sale Agreement, all rights and remedies with respect to the Note covered by such Loan Sale Agreement shall be governed by such Loan Sale Agreement.

Offers made during the Auction are void where prohibited by law. Any information on any website, in any brochure, e-mail or postcard and any and all information available regarding the Notes shall not constitute an offer to sell or a solicitation of any offer to buy any of the Notes referenced herein. In addition, and without limitation of the foregoing, any website or brochure shall not constitute an offer to sell or a solicitation of any offer to buy nor shall there be any sales of any of the Notes in any state in which such offer, solicitation, or sale would be unlawful prior to the registration or qualification under the applicable securities laws of that state. No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller. Seller reserves the right to rescind any oral acceptance of a winning bid prior to the execution and delivery of an executed contract of sale or loan sale agreement for any reason.

## 7. DISCLAIMER

Neither Seller nor Auctioneer makes any representations or warranties as to the accuracy or completeness of any information contained online at the Auction website or made available by the Seller or Auctioneer. All prospective purchasers are required and encouraged to conduct their own due diligence and investigate all matters relating to the Notes that they are interested in purchasing in the Auction. Online bidding is provided on an "as is, as available" basis. No warranties, expressed or implied, including, but not limited to, those of merchantability or fitness for a particular purpose, are made with respect to the online bidding platform or any information or software therein.

Neither Seller nor Auctioneer will be liable for any damages or injury, including, but not limited to, those caused by any failure of performance, error, omission, interruption, defect, delay in operation of transmission, computer virus, or line failure. Neither Seller nor Auctioneer will be liable for any damages or injury, including, but not limited to, special or consequential damages that result from the use of, or the inability to use, the website, the materials on the website, or the online bidding platform even if there is negligence or Auctioneer or an authorized Auctioneer representative has been advised of the possibility of such damages, or both. The above limitation or exclusion may not apply to you to the extent that applicable law may not allow the limitation or exclusion of liability for incidental or consequential damages. Seller's, or Auctioneer's total liability to you for all losses, damages, and causes of action (in contract, tort (including without limitation, negligence), or otherwise) will not be greater than the amount you paid to access this site.

"AS IS, WHERE IS AND WITH ALL FAULTS". ALL OF THE NOTES WILL BE SOLD BY SELLER AND AUCTIONEER "AS IS, WHERE IS AND WITH ALL FAULTS" AS MORE PARTICULARLY DESCRIBED IN THE LOAN SALE AGREEMENT. ALL PROSPECTIVE PURCHASERS/BIDDERS ACKNOWLEDGE AND AGREE THAT SELLERS AND AUCTIONEER HAVE NOT MADE, DO NOT MAKE AND SPECIFICALLY NEGATE AND DISCLAIM ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, CONCERNING OR WITH RESPECT TO THE NOTES. EACH PROSPECTIVE PURCHASER/BIDDER AND ANYONE CLAIMING BY, THROUGH OR UNDER THE SAME HEREBY FULLY AND IRREVOCABLY RELEASES SELLERS AND AUCTIONEER, THEIR RESPECTIVE EMPLOYEES, OFFICERS, DIRECTORS, TRUST MANAGERS, REPRESENTATIVES, ATTORNEYS, BROKERS AND AGENTS ("REPRESENTATIVES") FROM ANY AND ALL CLAIMS THAT HE/SHE/IT OR THEY MAY NOW HAVE OR HEREAFTER ACQUIRE AGAINST SELLERS, AUCTIONEER AND THEIR REPRESENTATIVE FOR ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION OR CAUSE OF ACTION ARISING FROM OR RELATING TO ANY ERRORS, OMISSIONS OR OTHER CONDITIONS AFFECTING THE NOTES. THIS RELEASE INCLUDES CLAIMS OF WHICH PROSPECTIVE PURCHASER/BIDDER IS PRESENTLY UNAWARE OR DOES NOT PRESENTLY SUSPECT TO EXIST IN HIS/HER/ITS FAVOR WHICH, IF KNOWN BY PROSPECTIVE PURCHASER/BIDDER, WOULD MATERIALLY AFFECT



RESERVE AUCTION TERMS AND CONDITIONS – POOL NOTES

ONLINE ONLY BIDDING

PROSPECTIVE PURCHASER'S/BIDDER'S RELEASE OF SELLERS AND AUCTIONEER.   EACH PROSPECTIVE PURCHASER/BIDDER SPECIFICALLY WAIVES THE PROVISIONS OF CALIFORNIA CIVIL CODE SECTION 1542, AND OTHER APPLICABLE STATE STATUTES WHICH PROVIDE AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

By registering for the Auction, Bidder agrees to these Terms and Conditions, as may be updated from time to time prior to the Auction.  Such form of acceptance by Bidder is binding and Bidder acknowledges it shall be binding and enforceable pursuant to the Electronic Signatures in Global and National Commerce Act ("E-Sign Act"), Title 15, United States Code, Sections 7001 et seq., the Uniform Electronic Transaction Act ("UETA") and applicable state laws.

01232013 POOL