```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
TRUMAN CAPITAL ADVISORS LP,
U.S. BANK NATIONAL ASSOCIATION, solely
as LEGAL TITLE TRUSTEE FOR THE
TRUMAN 2012 SC2 TITLE TRUST and as
PARTICIPATION AGENT FOR THE TRUMAN         MEMORANDUM AND ORDER
2012 SC2 TITLE TRUST, and TRUMAN
2012 SC2 TITLE TRUST,                      13 Civ. 5945 (NRB)

                    Plaintiffs,

  - against -

NATIONSTAR MORTGAGE, LLC

                    Defendants.
---------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs Truman Capital Advisors LP ("TCA"), Truman 2012 SC2 Title Trust (the "Trust"), and, in its capacity as legal title trustee and participation agent for the Trust, U.S. Bank National Association ("U.S. Bank") (collectively, "plaintiffs") bring this action against Nationstar Mortgage, LLC ("Nationstar" or "defendant"). Plaintiffs' complaint alleges claims for breach of contract and promissory estoppel arising out of defendant's refusal to consummate the sale of 538 mortgages that TCA attempted to purchase from Nationstar at auction. Pending before the Court is defendant's motion to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for

failure to state a claim.  For the reasons stated herein, we grant Nationstar's motion to dismiss.

## BACKGROUND

TCA is a limited partnership with its principal offices located in Armonk, New York.  Compl. ¶ 3.  TCA is an investment manager for institutional investors and, in this capacity, it created the Trust and served as the agent of Truman 2012 SC2, LLC (the "Depositor").  Id. ¶ 8.  As the Depositor's agent, TCA identified potential residential mortgage investments and then facilitated their purchase.  Id.  Once purchased, these mortgage investments were deposited into the Trust, which TCA subsequently managed.  Id.  U.S. Bank's involvement in this lawsuit is as the legal title trustee and participation agent for the Trust; it sues in this capacity and not as an individual actor.  Id. ¶ 4.  Nationstar is a mortgage servicer that services nearly 650,000 mortgages with a total unpaid principal balance of over $100 billion.  Id. ¶ 9.  Defendant's offices are located in New York, New York, and it is a registered mortgage banker licensed by the New York Banking Department.  Id. ¶ 6.

In or about January 2013, Nationstar enlisted Auction.com, a provider of online real estate auction services, to conduct a series of auctions for the sale of many non-performing residential mortgages, which were grouped into pools and offered

to bidders.  Id. ¶¶ 12, 16.  In each of the auctions, Nationstar established a minimum sale, or "reserve," price in advance of bidding; if the final bid did not exceed this price, the mortgages would not be sold, even to the highest bidder.  See id. ¶ 14.  On or about January 23, 2013, Auction.com published the Reserve Auction Terms and Conditions (the "Auction Terms") which would govern the Nationstar auctions, and TCA registered as an auction bidder on the same date.  Id. ¶¶ 17, 19; see also id. Ex. 1.  Plaintiffs and defendant agree that all parties to the instant dispute were bound by the Auction Terms.  See Def. Nationstar Mortg. LLC's Mem. of Law in Supp. of Mot. to Dismiss the Compl. ("Def.'s Mem.") at 5-7; Pls.' Mem. in Opp'n to Def.'s Mot. to Dismiss the Compl. ("Pls.' Opp'n") at 5.

In preparation for the reserve auctions, TCA conducted a due diligence review of 636 mortgage loans that it was interested in purchasing on behalf of the Depositor, and on February 21, 2013, TCA timely bid on 480 of those loans.  Compl. ¶¶ 25, 28.  At the conclusion of the auction, Auction.com confirmed in writing that TCA was the winning bidder for 304 of the 408 loans on which it had bid.  Id. ¶ 29.  The winning bid price was approximately $94,045,115.  Id.  Nationstar then conducted a second auction through Auction.com, and on March 6, 2013, TCA placed bids on 346 more mortgage loans.  Id. ¶¶ 35,

3

40. At the close of this second auction, TCA was the winning bidder for 234 additional mortgage loans, paying approximately $55,312,005 and bringing its total number of purchased loans to 538.  Id. ¶ 41.  As it did after the first auction, Auction.com confirmed TCA's status as the winning bidder in writing.  Id.

On March 15, 2013, Auction.com notified TCA that Nationstar had decided not to sell all of the mortgage loans for which TCA had been informed that it was the winning bidder.  Id. ¶ 45.  Nationstar maintains that it was within its rights to refuse to complete the sale of the 538 mortgage loans to TCA and, to this date, none of the sales to TCA have been consummated.  Id. ¶ 49.  In response, the Depositor authorized TCA to commence the instant lawsuit.  Id. ¶ 50.

TCA filed its complaint in the Supreme Court of the State of New York, County of New York, on July 29, 2013.  The complaint contains two counts: (1) breach of contract and (2) promissory estoppel.  Id. ¶¶ 51-58.  Plaintiffs seek damages in excess of $35 million based on Nationstar's refusal to complete the sale of the 538 mortgage loans at issue.  Defendant timely removed the action to this Court on August 22, 2013, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  See Notice of Removal at 1.  Then on December 20, 2013, defendant filed the instant motion to dismiss the complaint under Federal Rule of Civil Procedure

4

12(b)(6).  The motion was fully briefed by February 21, 2014, and we conducted oral argument on August 7, 2014.

## DISCUSSION

### I. Legal Standard

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor.  Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007).  Nevertheless, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (finding that a plaintiff's allegations must demonstrate "more than a sheer possibility that a defendant has acted unlawfully" in order to pass muster under Rule 12(b)(6)). Ultimately, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and if the plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." Twombly, 550 U.S. at 570.  This pleading standard applies to "all civil actions."  Iqbal, 556 U.S. at 684 (internal quotation marks omitted)).

5

II.   **Breach of Contract Claim**

Although plaintiffs initially brought suit in New York state court, all parties concede that the instant dispute is governed by California law.  See Auction Terms § 6, para. 2 ("The respective rights and obligations of the parties with respect to these Auction Terms and Conditions and the conduct of the Auction shall be governed by, interpreted and enforced under the laws of the state of California."); see also Def.'s Mem. at 7; Pls.' Opp'n at 7 n.6.  To state a claim for breach of contract under California law, a plaintiff must establish: (1) the existence of a contract, (2) the plaintiff's own performance or excuse for nonperformance, (3) the defendant's breach, and (4) damages.  Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 818 (9th Cir. 2014) (citing Abdelhamid v. Fire Ins. Exch., 106 Cal. Rptr. 3d 26, 32–33 (Ct. App. 2010)).

Defendant's argument is that plaintiffs' claim fails on the first prong of the test: a contract did not exist between the parties compelling Nationstar to sell the mortgages at issue. Most critically, defendant cites the following language in the Auction Terms: "No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale

agreement is signed and delivered by Seller."[1]  Auction Terms § 6, para. 3.  Nationstar maintains that it never signed and delivered either a contract of sale or a loan sale agreement, and as such, that it had no obligation to consummate the sale of the mortgages to TCA.  See Def.'s Mem. at 6-7.

Plaintiffs' points in opposition are manifold.  First, they claim that defendant's entire argument rests on the language of only a single line of the Auction Terms; when the Auction Terms are considered in their entirety, plaintiffs' assert, it becomes clear that Nationstar was bound to sell the mortgage loans to plaintiffs.  See Pls.' Opp'n at 7-11.  Put simply, plaintiffs contend that the Auction Terms created bilateral obligations -- because TCA faced steep penalties if it failed to purchase the loans after casting the winning bid, it follows that Nationstar must have been obligated to consummate the sale.  Id. at 11. Second, plaintiffs assert that the email confirmations from Auction.com that TCA was the winning bidder for the 538 mortgage loans at issue constituted written "contracts of sale" that were binding on Nationstar under the Auction Terms.  Third, plaintiffs contend that even if they did not have a contract with Nationstar under the Auction Terms, an enforceable

---

[1] It is undisputed that the word "Seller," as used throughout the Auction Terms, refers to defendant Nationstar.  See Auction Terms, Introduction ("'Seller' herein shall include the selling entity and its parent company, subsidiaries, or affiliated companies.").

agreement was nonetheless created under California common law. Id. at 22–23. Fourth and finally, plaintiffs maintain that dismissal is inappropriate at this stage of the litigation because the Auction Terms are, at the very least, ambiguous, and plaintiffs' motion is therefore ill-suited for determination on the pleadings. Id. at 22. Although plaintiffs' arguments are numerous, we find none persuasive, and we will address them each in turn.

### A.  Additional Auction Terms

Plaintiffs cite multiple provisions from the Auction Terms that they claim support their assertion that Nationstar was obligated to sell TCA the mortgage loans for which it was the winning bidder. Those provisions are as follows:

> (1) In order to become the Winning Bidder for a Note, a Bidder must meet or exceed the Reserve Price and the bid must be accepted by the Seller (see "Subject to Confirmation" section below).
>
> (2) To purchase a particular note at the Auction, one must be acknowledged by the Auctioneer as the Winning Bidder (the bidder to whom the Auctioneer acknowledges the note as being" SOLD" to) and such Note is not identified as being "Subject to Confirmation."
>
> (3) If the Winning Bidder cannot be reached within two (2) hours of Auctioneer's acknowledgment of the winning bid, then Auctioneer or Seller can declare the Winning Bidder to be in default.
>
> (4) In the event of such declaration [of default] the Winning Bidder's bid shall be null and void and the Auctioneer and Seller shall have absolutely no further liability or obligation to that Bidder.

8

> (5) **IN ADDITION, SUCH WINNING BIDDER SHALL BE SUBJECT TO LIQUIDATED DAMAGES EQUAL TO TEN PERCENT (10%) OF THE PURCHASE PRICE AND AUCTIONEER AND SELLER RESERVES THE RIGHT TO SEEK ANY AND ALL OTHER REMEDIES, INCLUDING SPECIFIC PERFORMANCE.**

Auction Terms § 3, paras. 1, 3, 4 (emphasis in original). Under plaintiffs' interpretation, these terms demonstrate "that the Auction Terms created bilateral rights and obligations" that attached when TCA was designated as the winning bidder, and defendant breached these obligations when it elected not to follow through on the mortgage loan sales. Pls.' Opp'n at 11. While we agree with plaintiffs that these terms suggest a winning bidder has some rights against the selling party, we do not conclude that one such right was to compel the sale of the loans on which the winning bidder had bid.

In considering the five terms listed, the first two are minimally relevant to the instant controversy. Essentially, these terms outline the process by which a party can become the winning bidder for a set of loans and that such a designation is a condition precedent to completing a sale. Here, there is no dispute that TCA was the winning bidder for the 538 mortgage loans at issue -- the only question is what rights, if any, such a designation conferred. Thus, the first two terms do not advance plaintiffs' argument that one of the <u>specific</u> rights

9

conferred by "winning bidder" status is the ability to compel the sale of the mortgages on which the party had bid.

By contrast, the third, fourth, and fifth terms cited by plaintiffs demonstrate that a seller does, in fact, have some obligation to the winning bidder. In particular, the fourth provision cited above -- which disclaims any obligation for the seller in the case of the winning bidder's default -- also provides evidence for its inverse: if the winning bidder did not default, then the seller did have some continuing obligation to the purchaser. However, the fact that Nationstar had some obligation to plaintiffs is not the same as saying that it had the specific obligation to consummate the sale. The Auction Terms make clear that, following a party's designation as a winning bidder, there must still be an exchange of a loan sale agreement, followed by a formal closing process, before the sale is completed. Auction Terms § 3, paras. 4, 9. These additional steps suggest that Nationstar structured the contract to allow it to retain multiple opportunities to walk away from the deal; one such opportunity, as defendant suggests, would be the decision not to sign and return the loan documentation. See id. § 6, para. 3. We find that a more logical reading of the Auction Terms is that after a party is confirmed to be the winning bidder, the seller would be obligated to either sell the

10

loans to the winning bidder at the agreed upon price or to refuse the sale.  In this case, after TCA was informed that it was the winning bidder, Nationstar could not have solicited further bids or further negotiated the price -- it could have either accepted the deal at the agreed upon price with TCA or walked away; those were the only two options.  This would have acted as a significant restraint on defendant and created a set of bilateral obligations, but these obligations would not have included a forced sale of the mortgage loans.

Plaintiffs resist this interpretation, insisting that they had participated in a reserve auction and, as such, a contract to sell the mortgages was formed when the auctioneer closed the bidding and TCA's bids were accepted.  See 7 Am. Jur. 2d Auctions & Auctioneers § 34.  However, this is a misapprehension of the Auction Terms.  We recognize that the title of the Terms and Conditions labelled the auction a "Reserve Auction" and that the similar language was included in the Auction Terms themselves.  See, e.g., Auction Terms § 3, para. 1 ("This is a reserve auction and all Notes have a reserve price.").  Substantively, however, the existence of a reserve was only one feature of the agreement, and the Auction Terms actually created a selling structure more akin to a conditional auction.

In a conditional auction, "the seller reserves the right to accept or reject bids after the close of the bidding." 7 Am. Jur. 2d Auctions & Auctioneers § 34; see also Young v. Hefton, 173 P.3d 671, 677 (Kan. Ct. App. 2007) (holding that where "there were signs and indications . . . that the sellers were retaining some measure of final approval or control" over the sale, it creates a conditional auction) (internal quotation marks omitted). Here, defendant's right to reject the winning bid was implicitly reserved through the inclusion of the term requiring that Nationstar return a signed contract of sale or loan sale agreement in order for the transaction to be consummated. "[W]here a right is reserved in the seller to reject any and all bids received, the right may be exercised by the owner even after the auctioneer has accepted a bid." In re El Camino Press, 31 B.R. 340, 344 (Bankr. C.D. Cal. 1983) (internal quotation marks omitted). Thus, defendant breached no agreement with plaintiffs when it elected not to consummate the sales in question.

Plaintiffs' invocation of a litany of Auction Terms that tangentially relate to the instant issue cannot obscure what is plain: TCA participated in a conditional auction in which Nationstar retained the right to renege on the deal unless and until it delivered particular signed documents to plaintiffs.

12

That delivery never came, and thus the deal was never done. Therefore, we reject plaintiffs' assertion that the contract as a whole suggests that Nationstar was obligated to sell the mortgage loans to TCA when it was named the winning bidder.

### B. The Winning Bidder Confirmations

Plaintiffs next argue that even if TCA's designation as the winning bidder did not create a binding obligation on Nationstar to sell the mortgages, the subsequent emails to TCA from Auction.com that confirmed TCA's status as the winning bidder functioned as an enforceable contract of sale. The argument proceeds as follows: (1) the emails were sufficiently definite to constitute an enforceable contract; (2) Auction.com was in the position to bind Nationstar; and (3) the Auction Term providing for the return of the signed loan sale agreement acted as just a formalization of the contract terms outlined in the emails. However, steps two and three in this logical chain are fatally flawed, and plaintiffs' argument fails as a result.

At the first step, plaintiffs' argument is supportable. "To be enforceable under California law, a contract must be sufficiently definite for the court to ascertain the parties' obligations and to determine whether those obligations have been performed or breached." Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 789 (9th Cir. 2012) (internal quotation marks

omitted).  Here, the emails from Auction.com contained the essential terms of an agreement, namely (1) the parties involved, (2) a description of the mortgages to be sold, (3) the price of the mortgages, and (4) the timing of sale.  See Unihan Corp. v. Max Grp. Corp., No. CV 09-07921 MMM, 2011 WL 6814044, at *7 (C.D. Cal. Dec. 28, 2011) (offering "price, quantity, product specifications, and delivery deadline" as examples of essential terms).  Thus, in a theoretical sense, the emails contained sufficient information to act as a binding contract.

However, this would be a contract between TCA and Auction.com, not between TCA and Nationstar.  Undoubtedly, Auction.com functioned as the agent of Nationstar for the purpose of conducting the auctions, but Auction.com was not defendant's agent in the context of the delivery of the signed contract of sale.  The Auction Terms make clear that Auction.com was "acting exclusively as the Seller's agent as an auctioneer." Auction Terms § 3, para. 1 (emphasis added).  Thus, Auction.com's position as an agent that may bind Nationstar stopped with the drop of the auction hammer; the subsequent email confirmations, therefore, could not have bound defendant. Cf. Cal. Civ. Code § 2330 (West 2014) ("An agent represents his principal for all purposes within the scope of his actual or ostensible authority." (emphasis added)).

14

Furthermore, the Auction Terms specifically provide that Nationstar would have no obligation to sell "until a written contract of sale or loan sale agreement is signed and delivered by Seller." Id. § 6, para. 3 (emphasis added). Throughout the Auction Terms, a distinction is drawn between Nationstar, the Seller, and Auction.com, the Auctioneer, and when both parties have the authority to act, that fact is made clear. See, e.g., id. § 3, para. 4 ("Auctioneer or Seller can declare the Winning Bidder to be in default."); id. § 6, para. 1 ("Seller and Auctioneer have the right to postpone or cancel the Auction . . . ."). Thus, the fact the Auction Terms state that the seller had the authority to sign and deliver the sale documentation and did not mention that the auctioneer may also have done so suggests that the Auction.com's conduct would have been no substitute for that of Nationstar in fulfilling this provision.

Moreover, it is inaccurate to assert that the written and signed loan sale agreement functioned as a mere formalization of the contract terms contained in the email confirmations. By ensuring that it would not be bound until it signed and delivered a loan sale agreement, Nationstar used the process of reducing the terms to a signed writing as a mechanism to retain final approval over the deal. In fact, the Auction Term cited by defendant operates as "an express reservation of the right

15

not to be bound" in the absence of a particular, signed writing. Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 549 (2d Cir. 1998) (quoting Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985)); see also The Aspect Grp., Inc. v. Movietickets.com, Inc., No. CV 05-3125 SFEX, 2006 WL 5894608, at *7 (C.D. Cal. Jan. 24, 2006) ("[W]here it is understood that the agreement is incomplete until reduced to writing and signed by the parties, no contract results." (internal quotation marks omitted)).  Accordingly, the emails from Auction.com did not bind Nationstar, and plaintiffs' argument to the contrary fails.

### C. California Common Law

Plaintiffs next suggest that even if this Court were to find, as we do above, that a contract was not formed between the parties under the Auction Terms, we should nevertheless hold that a contract was formed by common law principles.  See Pls.' Opp'n at 22-23.  This argument lacks merit.  All parties acknowledge that they acceded to the Auction Terms, which were in turn binding on both plaintiffs and defendant.  One such term, as we elaborated above, ensured that Nationstar would not be bound unless and until it delivered signed loan documentation.  If express agreements, such as the Auction Terms, could be trumped by common law dictates, it would render the written contract a nullity and disregard the manifest intent

16

of the parties.  See Tehama-Colusa Canal Auth. v. U.S. Dep't of Interior, 819 F. Supp. 2d 956, 987 (E.D. Cal. 2011) ("The plain language within the four corners of the contract must first be examined to determine the mutual intent of the contracting parties."); see also Facility Constr. Mgmt. Inc. v. Ahrens Concrete Floors, Inc., No. 1:08-cv-01600-JOF, 2010 WL 1265184, at *4 (N.D. Ga. Mar. 24, 2010) (listing cases that stand for the proposition that the express terms of a contract supersede common law).  We will not disregard the specific terms to which all parties assented and instead apply a set of general principles which happen, in this instance, to be more advantageous to plaintiffs.  Consequently, we reject plaintiffs' argument that defendant was obligated to complete the sale of the mortgage loans under California common law.

    **D.  Ambiguity of the Auction Terms**

Plaintiffs' final attempt to salvage their breach of contract claim is to assert that the Auction Terms are simply too ambiguous to warrant a dismissal of their breach of contract claim.  "Where the existence of a contract is at issue and the evidence is conflicting or admits of more than one inference, it is for the trier of fact to determine whether the contract actually existed."  Bustamante v. Intuit, Inc., 45 Cal. Rptr. 3d 692, 699 (Ct. App. 2006).  However, as we have maintained

17

throughout, the Auction Terms are clear: "No obligation to sell shall be binding on Seller unless and until a written contract of sale or loan sale agreement is signed and delivered by Seller." Auction Terms § 6, para. 3.  Because no written contract of sale or loan sale agreement was delivered to plaintiffs by Nationstar, defendant was under no obligation to sell the mortgage loans at issue.  While plaintiffs' arguments have relied on obfuscation, or at least complication, of the Auction Terms, the aforementioned conclusion is simple and clear based on the plain language of the agreement.  Therefore, we find the Auction Terms unambiguous and dismiss plaintiffs' claim against defendant for breach of contract.

### III.  Promissory Estoppel Claim

Plaintiffs assert that irrespective of our finding regarding the breach of contract claim, they have still adequately pled a claim for promissory estoppel.  "Under California law, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Sateriale, 697 F.3d at 792 (citing U.S. Ecology, Inc. v. State, 28 Cal. Rptr. 3d 894, 905 (Ct. App. 2005)).

This claim fails based on the very first element of the test.  Plaintiffs contend that that this prong is "satisfied by the allegation that Auction.com, acting as Defendant's agent, listed the notes for auction and invited TCA . . . to submit bids to purchase the notes."  Pls.' Opp'n at 23.  Yet, as we establish above, this invitation to bid is far from a clear and unambiguous promise to the bidder that it is entitled to consummate the purchase of the loans if it wins the auction.  Rather, the Auction Terms outline that designation of a party as a winning bidder is but the first step among many in completing a sale.  Accordingly, plaintiffs have failed to plead the first element of a promissory estoppel claim, and the count must be dismissed as a result.[2]

---

[2] Because we dismiss this count based on the first element, we do not analyze the second through fourth prongs of pleading promissory estoppel under California law.  We note, however, that given the plaintiffs' sophistication and their ability to comprehend defendant's reservation of the right to renege on the sale unless and until it delivered the signed loan sale agreement, we would likely find plaintiffs' reliance on Nationstar's alleged promises to complete the sale to be unreasonable.

## CONCLUSION

For the foregoing reasons, we grant Nationstar's motion to dismiss the complaint in its entirety. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 14 and close this case.

SO ORDERED.

Dated: New York, New York
August 22, 2014

*[signature]*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiffs**
Robert D. Piliero, Esq.
Robert J. Ontell, Esq.
Michelman & Robinson
800 Third Avenue, 24th Floor
New York, NY 10022

**Attorneys for Defendant**
Matthew P. Previn, Esq.
Ross E. Morrison, Esq.
BuckleySandler LLP
1133 Avenue of the Americas, Suite 3100
New York, NY 10036